Ji Sum Jennifer KIM, Plaintiff,

v.

GOLDBERG, WEPRIN, FINKEL GOLDSTEIN, LLP et al., Defendants.

No. 10 Civ. 6101 (VM).

United States District Court, S.D. New York.

May 4, 2012.

314

Adam Charles Lease, Ari Risson Karpf, Karpf, Karpf & Cerutti, P.C., Bensalem, PA, Miguel Angel Terc, Jr., Attorney at Law, for Plaintiff.

Marie Ann Hoenings, Nicole Feder, Lieben, Whitted, Houghton, Slowiaczek & Cavanagh, P.C., L.L., Omaha, NE, for Defendants.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Ji Sun Jennifer Kim ("Kim") brought this action against defendants Goldberg, Weprin, Finkel Goldstein, LLP ("GWFG"), Barry Zweigbaum ("Zweigbaum"), Arnold Mazel ("Mazel"), and Andrew Albstein ("A. Albstein," collectively, "Defendants"), claiming violations of the Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA"); New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8–107(1)(a) ("NYCHRL"). Kim alleges that Defendants (1) interfered with her rights under the FMLA; (2) retaliated against her for taking an FMLA-qualifying medical leave and for engaging in an FMLA-protected activity; and (3) discriminated against her on the basis of her pregnancy and gender in violation of NYSHRL and NYCHRL. (*See* Docket

No. 24.) Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"), arguing that Kim's claims under the FMLA, NYSHRL and NYCHRL are insufficient as a matter of law. (*See* Docket No. 40.) For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND[1]

GWFG hired Kim as an associate attorney in its tax certiorari department in January 2008. Kim was responsible for preparing cases for pretrial conference, attending pretrial hearings, arguing cases in court and before the New York Tax Commission, conducting investigations in response to client inquiries, and reviewing applications and other documents to be submitted to courts or the Tax Commission.

Kim became pregnant in January 2009, after working for GWFG for approximately one year. In March 2009 she told her supervisor, Zweigbaum, about her pregnancy, and in September 2009 Kim took medical leave for twelve weeks (the "2009 Leave") to give birth and care for her newborn.

Kim alleges that, while she was employed at GWFG, she was subjected to derogatory and discriminatory treatment on several occasions. However, her FMLA claims center on her request for intermittent leave in the spring of 2010,[2]

which was denied by GWFG, and her termination by GWFG in April 2010.

## A. REQUEST FOR INTERMITTENT LEAVE

In February 2010, Kim asked Mazel whether she could work fewer hours so that she could breastfeed and care for her newborn at home. Kim contends that she was working sixty to seventy hours per week at that time, and that she requested not to have to work past 8:00 p.m. Mazel denied her request and told Kim that she could not work a reduced schedule because, as a matter of firm policy, GWFG does not allow attorneys to work from home or part time.

## B. TERMINATION

Kim was terminated in April 2010. On the day she was terminated, Zweigbaum told her that she was being dismissed for budgetary reasons. However, Kim doubted that this was the real reason for her termination because she knew that the tax certiorari department was busy, and the firm had hired a new tax certiorari attorney just one month earlier in February 2010, Gil Nahmias ("Nahmias").

Defendants assert that Kim's termination was part of a reduction in staff due to the downturn in the economy in 2009–2010, and the loss of several important clients, which caused a substantial drop in firm revenue. GWFG argues that Kim was one of five employees terminated be-

---

1. The factual summary that follows derives primarily from the First Amended Complaint ("Compl.") (Docket No. 24); Answer to First Amended Complaint (Docket No. 27); Letter–Brief in Support of Defendants' Motion for Summary Judgment ("Def. Br."), dated August 29, 2011 (Docket No. 40); Plaintiff's Letter–Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Br."), dated September 2, 2011 (Docket No, 42); and Reply Letter-brief in Further Support of Defen-

dants' Motion for Summary Judgment, dated September 9, 2011 (Docket No. 43). Except where specifically referenced, no further citation to these sources will be made.

2. Although the Complaint says "January through April 2009," this is clearly a typographical error, so the Court will read the Complaint as saying "January through April 2010."

tween January and April 2010, including two male attorneys in January 2010 and one male clerk and two female secretaries in April 2010. GWFG further asserts that Kim was selected for dismissal due to her average performance, and because she worked only the minimum number of hours required.

Defendants do not assert that Kim was terminated due to disciplinary problems and admit that she was reprimanded for disciplinary reasons only once. On June 5, 2009 Kim was advised by Iris Albstein, a partner at GWFG and the brother of A. Albstein, that it was inappropriate for her to be reading a book during work hours.

Defendants explain that despite the budget problems, Nahmias was hired because of his years of experience. Moreover, Defendants deny that Kim was treated differently after returning from leave in December 2009, and they dispute Kim's characterization of certain events as instances of derogatory, discriminatory or hostile treatment.

## II. *DISCUSSION*

### A. *LEGAL STANDARD*

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986).

The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in favor of the non-moving party. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The opposing party cannot defeat summary judgment by relying on the allegations in the complaint, conclusory statements, or mere assertions that affidavits supporting the motion are not credible. *See Gottlieb v. County of Orange,* 84 F.3d 511, 518 (2d Cir.1996).

### B. *FMLA CLAIMS*

Under the FMLA, an eligible employee is entitled to take up to twelve weeks of unpaid leave in any twelve-month period "[b]ecause of the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. § 2612(a)(1)(A), The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1) (" § 2615(a)(1)"). "A plaintiff may raise separate claims under the FMLA for 'interference' with rights and for 'retaliation'" against the exercise of those rights. *McFarlane v. Chao,* No. 04 Civ. 4871, 2007 WL 1017604, at *28–29 (S.D.N.Y. Mar. 30, 2007) (*citing Potenza v. City of New York,* 365 F.3d 165, 167 (2d Cir.2004)); *see also Sista v. CDC Ixis North Am., Inc.,* 445 F.3d 161, 175–76 (2d Cir.2006).

#### 1. *Interference*

Kim argues that GWFG unlawfully interfered with her exercise of FMLA rights in violation of § 2615(a)(1) by denying her request for a reduced schedule or intermittent leave in February 2010.

■ To establish a prima facie case of interference, a plaintiff must demonstrate: "(1) that she is an 'eligible employee' under the FMLA; (2) that defendants constitute an employer under the FMLA; (3) that she was entitled to leave under the FMLA; (4) that she gave notice to defendants of her intention to take leave; and (5) that defendants denied her benefits to which she was entitled by the FMLA." *Roberts v. Ground Handling, Inc.*, 499 F.Supp.2d 340, 351 (S.D.N.Y.2007) (quotations and citations omitted).

For the purposes of summary judgment, the parties do not dispute that Kim has satisfied the first and second elements of her prima facie case, and since GWFG does not raise the issue of notice, the Court addresses in detail only the third and fifth elements of Kim's interference claim.

■ GWFG argues that Kim's interference claim fails because she was not entitled to intermittent leave in February 2010, and the Court agrees. Under the FMLA, leave may be taken intermittently or on a reduced schedule. 29 U.S.C.A. § 2612(b). However, leave taken under 29 U.S.C. § 2612(a)(1)(A) for the birth of a child or to care for a healthy newborn "shall not be taken by an employee intermittently or on a reduced leave schedule unless the employee and the employer of the employee agree otherwise." 29 U.S.C. § 2612(b)(1). In the absence of an agreement, employees are entitled to intermittent leave under the FMLA only if they are taking time off to care for a family member with a serious health condition or because of the employee's own serious health condition when the intermittent leave is medically necessary. *Id.; see also Kindred v. State of Okl. ex rel. Bd. of Regents for Okla. Agric. & Mech. Colleges*, No. 05 Civ. 306–C, 2006 WL 752869, at *2 (W.D.Okla. Mar. 23, 2006) ("Plaintiff's de-

sire to [take intermittent leave] to care for her child, when there is no evidence the child had a serious health condition, is not protected by the FMLA.").

■ In this case there is no allegation of an agreement regarding intermittent leave. In fact, Kim admits that Defendants refused her request for intermittent leave because it was not GWFG's policy to allow associates to work part time or from home. Kim also admits that neither she nor a family member had a serious health condition that would entitle her to intermittent leave without GWFG's consent.

Because Defendants did not deny Kim any benefit to which she was entitled under the FMLA by refusing her request for intermittent leave in 2010, the Court concludes that Defendants are entitled to summary judgment with respect to Kim's interference claim.

### 2. *Retaliation*

Kim claims that GWFG unlawfully retaliated against her for exercising her FMLA rights, in violation of § 2615(a)(1), by taking into consideration the following facts in its decision to terminate her: (1) that she requested intermittent leave in 2010; and (2) that she took twelve weeks of unpaid leave in 2009.

■ Where, as here, a plaintiff alleges an FMLA retaliation claim without direct evidence of the employer's retaliatory intent, the claim is evaluated under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Behringer v. Lavelle Sch. for the Blind*, No. 08 Civ. 4899, 2010 WL 5158644, at *14 (S.D.N.Y. Dec. 17, 2010) (*citing Sista*, 445 F.3d at 175–76). To establish a prima facie case of retaliation under the FMLA, the plaintiff must show that "(1) he exercised rights pro-

tected by the FMLA; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir.2004) (per curiam).

■ If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, clear, specific and nondiscriminatory reason for its actions. *Esser v. Rainbow Adver. Sales Corp.*, 448 F.Supp.2d 574, 581 (S.D.N.Y.2006) (*quoting Quaratino v. Tiffany & Co.*, 71 F.3d 58, 64 (2d Cir.1995)). "If the employer satisfies that burden, ... the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for [retaliation]." *Id.*

### a. *Retaliation for Kim's 2010 request for intermittent leave.*

The first element of Kim's prima facie case is that she exercised her rights under the FMLA. GWFG argues that Kim was not entitled to intermittent leave, and therefore did not exercise FMLA-protected rights when she requested a reduced schedule in 2010. The Court agrees.

Although the Second Circuit Court of Appeals has not yet directly addressed whether employees must prove they were entitled to FMLA leave to satisfy the first element of a prima facie case, recent decisions in this District have uniformly held that proving entitlement is a necessary prerequisite to a valid FMLA retaliation claim. *See, e.g., Milne v. Navigant Consulting*, No. 08 Civ. 8964, 2010 WL 4456853, at *10 n. 19 (S.D.N.Y. Oct. 27, 2010) ("It appears clear that in order for a plaintiff to 'exercise rights protected under the FMLA,' the plaintiff must demonstrate she actually has a valid claim to FMLA

benefits."); *Higgins v. NYP Holdings, Inc.*, No. 10 Civ. 8217, 836 F.Supp.2d 182, 194–95, 2011 WL 6083702, at *10 (S.D.N.Y. Dec. 7, 2011); *Lee v. Heritage Health & Hous., Inc.*, No. 07 Civ. 10628, 2009 WL 3154314, at *14 n. 14 (S.D.N.Y. Sept. 30, 2009) ("If Plaintiff cannot show that she had a serious health condition, entitling her to FMLA leave, then, *a fortiori,* she cannot show that she was retaliated against for exercising rights that were, in fact, protected by the Act."); *Brown v. The Pension Boards*, 488 F.Supp.2d 395, 410 (S.D.N.Y.2007) (retaliation claim failed because employee "did not enjoy FMLA protection"); *see also Hegre v. Alberto–Culver USA, Inc.*, 485 F.Supp.2d 1367 (S.D.Ga.2007) *aff'd,* 275 Fed.Appx. 872 (11th Cir.2008) (granting summary judgment for employer because employee failed to show she was entitled to intermittent FMLA leave, as required for retaliation claim under FMLA).

■ As discussed above, Kim cannot establish that she was entitled to intermittent leave in February 2010. Thus, she did not "exercise[ ] rights protected by the FMLA" in requesting such leave, and, therefore, she is unable to make out a prima facie case for retaliation. *Potenza,* 365 F.3d at 168. Accordingly, the Court grants Defendants' motion for summary judgment with respect to Kim's retaliation claim related to her request for intermittent leave in 2010.

### b. *Retaliation for Kim's 2009 leave*

The parties do not dispute that the first three requirements are met for the retaliation claim relating to Kim's 2009 Leave. However, Kim has not pled facts sufficient for a reasonable factfinder to conclude that there is a causal link between her termination and the 2009 Leave; therefore, her retaliation claim must also fail as to the 2009 Leave.

A close temporal relationship between the exercise of a protected right and an adverse employment action can, in some cases, sustain the conclusion that the action was a retaliation for the exercise of the right. The Second Circuit, however, has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of an FMLA right and an allegedly retaliatory action. *Gorman–Bakos v. Cornell Co-op. Extension of Schenectady Cty.*, 252 F.3d 545, 554–55 (2d Cir.2001). Nonetheless, district courts within the Second Circuit have consistently held that the passage of more than two to three months between the protected activity and the adverse employment action militates against an inference of causation. *See Kamrowski v. Morrison Mgmt. Specialist*, No. 05 Civ. 9234, 2010 WL 3932354, at *22 (S.D.N.Y. Sept. 29, 2010) (collecting cases).

Therefore, the four month gap between Kim's 2009 Leave and her termination precludes the Court from presuming that there was a causal connection based on temporal proximity alone. Thus, Kim must demonstrate causation through other direct or indirect evidence to prove her prima facie case.

Even viewing the allegations and evidence in the record in the light raost favorable to Kim, the Court finds that the circumstances surrounding Kim's dismissal do not create a reasonable inference that discrimination played any role in GWFG's decision to terminate her.

Kim admits that the firm made accommodations related to her pregnancy before her 2009 Leave by assigning another attorney to cover her court appearances so she did not have to travel, and by giving her adequate time to attend medical appointments. She also admits that when she returned from leave she returned to the same job with the same title, the same responsibilities and the same compensation. (*See* Pl. Br. Ex. A at 71.)

Moreover, Kim's allegations of disparate treatment upon her return are dubious for two reasons. First, her claims are almost entirely general and conclusory. For instance, she says that she was not granted the same "courtesies or flexibility" when she returned from leave, but she does not articulate specific instances in which this occurred. (Compl. ¶ 17.) Second, those instances of differential treatment that she does identify are undermined by her own deposition testimony. For example, she asserts that items on her desk were missing when she returned after her 2009 Leave, but later admits that the missing items were taken by friends of hers in the office. (*See* Pl. Br. Ex. A at 69.)

Finally, Kim's claim that she was replaced by Nahmias, an attorney who was hired by GWFG to work in the tax certiorari department a short time before Kim was terminated, is undermined by her admission that Nahmias was more experienced than she was. (*See* Pl. Br. Ex, A at 203–4.)

In addition, even if the Court were to find that Kim had met the requirements of her prima facie case,[3] she has not pled facts sufficient for a reasonable factfinder to conclude that GWFG's proffered non-discriminatory reason for her termination was pretextual.

---

3. A burden that the Court recognizes is light. *See Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir.2001) ("The plaintiff's burden … is a light one, usually demanding only that the protected activity preceded the adverse action in order to satisfy the causation requirement.")

Assuming that Kim has met the requirements of her prima facie case, the burden shifts to GWFG to put forth a non-discriminatory reason for her termination. GWFG has submitted evidence in support of its position that Kim was dismissed because of GWFG's need to reduce staff in response to difficult economic times and the loss of several important clients. The record indicates that Kim was one of several employees terminated during this period. GWFG also claims that Kim was selected for termination because of her "average" work product, and the minimal number of hours she worked. (Def. Br. Ex. C at 46, Ex. F at 75; Pl. Br. Ex. H at 49.)

■ At this stage in the analysis, GWFG need only proffer some non-discriminatory reason for its actions. There is no need to assess the credibility of the proffered reasons and GWFG need not show that it actually relied on these reasons. *Mattera v. JPMorgan Chase Corp.*, 740 F.Supp.2d 561, 574 (S.D.N.Y.2010) (*quoting St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Thus, even if Kim stated a prima facie case, the Court would find that GWFG has met its burden of rebutting the presumption of discrimination.

■ The burden then would shift back to Kim to show that GWFG's proffered reasons were more likely than not pretext for unlawful discrimination. In order to demonstrate that the employer's stated non-discriminatory reasons for the allegedly discriminatory action are pretextual, "[a] plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196,

203 (2d Cir.1995). However, "[t]o allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in [all] cases." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). Therefore, to rebut an employer's proffered nondiscriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight." *Smith v. American Exp. Co.*, 853 F.2d 151, 154–55 (2d Cir.1988). The Court finds that Kim has not met this burden.

■ Kim has submitted some evidence that GWFG's stated reasons for her termination were incomplete or false; such evidence can lend support to an inference of retaliatory intent. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ("Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive."). She argues, and Defendants admitted at deposition, that when she was terminated, Kim was told that she was being let go solely for budgetary reasons, and not because of problems with her work product or work ethic. Nevertheless, Defendants assert that they also terminated Kim, or at least chose her for termination over other employees, because her work was average and she only billed the bare minimum number of hours. This inconsistency in how GWFG presented its rationale for her termination supports Kim's argument that their non-discriminatory reasons for letting her go are pretextual.

■ However, "there will be instances where, although the plaintiff has established a prima facie case and set forth

sufficient evidence to reject the defendant's explanation, no rational fact finder could conclude that the action was [retaliatory]." *Id.* at 148, 120 S.Ct. 2097; *see also Karavish v. Ceridian Corp.*, No. 09 Civ. 935, 2011 WL 3924182, at *7 (D.Conn. Sept. 7, 2011); *James v. New York Racing Ass'n*, 233 F.3d 149, 156–57 (2d Cir.2000) (affirming summary judgment in favor of employer, despite employee's prima facie case and evidence that employer's proffered reason was false).

▮ Thus, even if a plaintiff has established a prima facie case and presented evidence that contradicts an employer's proffered reason, a court must still "examine the entire record and, in accordance with *Reeves*, make the case-specific assessment as to whether a finding of [retaliation] may reasonably be made." *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 382 (2d Cir.2001).

Upon review of the record as a whole, the Court is persuaded that Kim has not raised a genuine issue of material fact regarding GWFG's motives for dismissing her. She returned from her 2009 Leave and was reinstated in the same position with the same title, responsibilities and pay. Her allegations of differential treatment after her return from leave, and her allegation that she was replaced by Nahmias, are undermined by her own deposition testimony. Kim's termination occurred too long after her return from the 2009 Leave—four months—to suggest that her termination was the result of that leave and she pleads no other facts that could lead to the conclusion that it is more likely than not that GWFG's decision to terminate her was pretext for discrimination.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Kim's retaliation claim as related to her 2009 leave.

## C. *NYSHRL AND NYCHRL CLAIMS*

▮ Since the Court has disposed of Kim's federal claims, it declines to exercise supplemental jurisdiction over her NYSHRL and NYCHRL claims, and therefore dismisses both claims without prejudice. *See* 28 U.S.C. § 1367(c)(3); *see also Sadallah v. City of Utica*, 383 F.3d 34, 40 (2d Cir.2004) ("[B]ecause plaintiffs no longer have any viable federal claim, any remaining state law claims belong in state, rather than federal, court. The district court should therefore decline supplemental jurisdiction over any state law claims.") (*citing United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (additional internal citation omitted)).

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion of defendants Goldberg, Weprin, Finkel Goldstein, LLP, Barry Zweigbaum, Arnold Mazel, and Andrew Albstein for summary judgment (Docket No. 40) is GRANTED.

The Clerk of Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**